IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CV-39-FL

| | |
|---|---|
| SUSAN G. MORTON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on Claimant's Motion for Summary Judgment [DE-18] and Defendant's Motion for Judgment on the Pleadings [DE-24]. Claimant Susan G. Morton seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. After thorough review of the record and consideration of the briefs submitted by counsel, this Court recommends denying Claimant's Motion for Summary Judgment and granting Defendant's Motion for Judgment on the Pleadings.

## STATEMENT OF THE CASE

Claimant filed applications for DIB and SSI payments on 23 January 2004. (R.76-78; 384-386). Claimant alleged disability beginning 26 July 2003 due to sleep apnea, lung disease, high blood pressure, depression and short-term bladder control (R.76, 124). Both claims were denied initially and upon reconsideration. (R.59-69, 387-392). Following a hearing on 22 November 2005 before the Administrative Law Judge ("ALJ"), the ALJ issued a decision denying Claimant's claims on 10 March 2006. (R.17-29). The ALJ's decision is a "final

decision" for purposes of judicial review as the Appeals Council denied Claimant's request for review on 24 November 2006. *See Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002) (noting the Appeals Council's denial of claimant's request for review renders the ALJ's determination as the final decision of the Commissioner for purpose of appeal). Claimant timely commenced this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g) (2007).

## STANDARD OF REVIEW

The scope of judicial review of a final decision regarding disability benefits under the Act is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his/her findings and rationale in

crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). At step one, if the claimant is currently engaged in substantial gainful activity ("SGA"), the claim is denied. If the claimant is not engaged in SGA, then at step two, the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him/her from performing basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). If no severe impairment or combination of impairments is found, the claim is denied.

If the claimant has a severe impairment or combination of impairments, at step three, the ALJ determines whether the claimant's impairment or combination of impairments matches or is medically equivalent to an impairment in the Listings of Impairment ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If so, the person is disabled per se. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the ALJ must determine the claimant's residual functional capacity ("RFC") then at step four, decide whether the claimant has the RFC to perform his/her past relevant work despite the impairment. 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is deemed not disabled and the claim is denied. If the claimant is unable to perform any past relevant work, at step five, the burden shifts to the Commissioner to prove the claimant, based on his/her age, education, work experience and RFC, can perform other SGA notwithstanding claimant's severe impairment(s). The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to the existence of jobs which the claimant is capable of performing.

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the medical evidence and the opinion of the treating physician; (2) improper credibility assessment; and (3) improper RFC determination. Pl's Brf. in Support of Pl.'s Mot. for Summ. J. at 7 (hereafter "Plaintiff's Brief").

## FACTUAL HISTORY

### I. ALJ's Findings

The ALJ applied the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found Claimant had not engaged in SGA at any time relevant to the ALJ's decision. (R.22). Next, the ALJ determined Claimant had the following combination of severe impairments: (1) sarcoidosis, (2) sleep apnea, (3) hypertension, (4) dysthymic disorder and (5) lumbar degenerative disc disease. *Id.* At step three, the ALJ concluded Claimant's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently and to perform simple, routine and repetitive tasks with a sit/stand option. (R.23). The ALJ based his RFC assessment on medical source statements from eight physicians (R.23-25) in addition to Claimant's testimony as to the intensity and persistence of her symptoms associated with the above-referenced impairments. (R.25). The ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a cabinet assembler, a detailer and a material handler. (R.27). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands

4

of other employment opportunities that exist in significant numbers in both North Carolina and the nation. (R.28). As such, the ALJ found Claimant "not disabled" as defined in the Act.

## II. Claimant's Testimony at Administrative Hearing

Claimant testified at the administrative hearing. (R.40-52). At the time of the hearing, Claimant was 50 years old, unemployed, divorced, caring full-time for her four grandchildren and receiving Medicaid benefits for approximately six months. (R.41, 43). Claimant is a high-school graduate with approximately two years of college education. (R.42). Claimant was previously employed by Moen Incorporated for a period of ten years. (R.44). Her position was that of rip stocker, which required standing, operating machinery and lifting on average thirty (30) pounds. (R.43-44). Prior to her employment with Moen Incorporated, Claimant worked for Kitchen Arts (formerly known as Tom's Cabinets) for ten years. (R.44). Claimant's initial duties included cutting out and routing drawer fronts and doors. She spent the final four years of employment creating kitchen designs initially by hand and then via the computer. *Id.*

Claimant stated she is unable to perform her past work due to pain in her lower back, shoulders, arms and legs. (R.45). However, her primary complaint is back pain, which she has experienced for the past two and a half years and arises from "any movement." *Id.* Claimant's pain exists whether she stands or sits. (R.45-46). For this reason, Claimant alternates between sitting and standing in twenty (20) to thirty (30) minute intervals. *Id.* Claimant also testified to suffering from fatigue, restless leg syndrome, sleep apnea and short-term memory loss. (R.47-49). Claimant rests for approximately one and a half hours each day. (R.47). Claimant receives no relief from her back pain despite receiving epidurals and taking muscle relaxants and pain pills. (R.48, 51). At the time of her testimony, Claimant was not taking medication for her pain

5

due to the ineffectiveness of the previously prescribed medication. (R.52). Claimant stated her condition has worsened since she was diagnosed with Sarcoidosis. (R.50-51).

Claimant is active during the day but spreads out her daily activities to accommodate her pain and fatigue. (R.47). Claimant visits the grocery store four to fives times a week due to her inability to stand for more than 20 minutes. (R.45, 49). Claimant's grandchildren assist her with daily chores. (R.49). Claimant does not attend church, sporting or social events nor does she shop for clothing for her grandchildren. (R.49-50).

### III. Vocational Expert's Testimony at Administrative Hearing

Stephen D. Carpenter testified as a VE at the administrative hearing. (R.52-58). After the VE's testimony regarding Claimant's past work experience (R.53-54), the ALJ posed the following hypothetical:

> [L]et me pose a hypothetical assuming the individual, age 50 with at least a high school education, past relevant work experience as described by the claimant, with the exertional capacity for light work, but requiring a sit-stand option. Would there be other occupations that such an individual could perform?

(R.54). The VE responded in the affirmative. *Id.* According to the VE, such an individual could perform the jobs of (1) assembler, electrical accessories I with a Specific Vocational Preparation ("SVP") of 2 and Dictionary of Occupational Title ("DOT") code 729.687-010, (2) office helper-clerical industry, with a SVP of 2 and DOT code 329.567-010 and (3) recreation facility attendant, with a SVP of 3 and DOT code 341.367-010. (R.54-55). The VE testified that these jobs exist in substantial numbers in both North Carolina and the nation. *Id.*

Claimant's counsel also questioned the VE. (R.55-58). The VE explained "light" jobs allowing for a sit/stand option include non-driving light positions and work station positions.

6

(R.55). While the non-driving positions require 6 hours of standing and/or walking and two hours of sitting, the work station positions afford a more flexible schedule as to alternating between standing and sitting. (R.56). Specifically, work station positions require workers to sit or stand for up to 30 minutes at time. *Id.* The VE explained if the hypothetical individual needed to lie down in the afternoon outside of normal breaks or lunch hours, such an individual would be unable to perform light work. However, if this individual needed to walk intermittently throughout the day to relieve stiffness and pain, such action could be permissible assuming no significant interruption to that individual's work pace and performance. (R.57). The VE testified that while work station positions are unskilled jobs, the individual must be capable of understanding simple work orders and carrying out said orders in two-hour increments. (R.57-58).

## DISCUSSION

### I. The ALJ did not err in evaluating the medical evidence or the opinion of Claimant's treating physician.

Claimant contends the ALJ improperly evaluated the medical evidence and the opinion of Robert A. Dietrich, M.D., Claimant's treating physician. This Court disagrees. First, Claimant argues the ALJ accorded great weight to the portion of Dr. Dietrich's opinion supporting the ALJ's finding that the Claimant is not under a disability while ignoring sections favoring Claimant's disability claim. Pl.'s Brf. at 8-9. In particular, Claimant contends the ALJ failed to consider Dr. Dietrich's September 2003 finding that it would be "best" for Claimant to "stay out of work until...her complaints of hypersomnolence" are sorted out. (R.227); Pl.'s Brf. at 9. At the time of this statement, however, Claimant operated a large forklift machine and had not undergone a sleep study. (R.227). Dr. Dietrich was expressing concern over Claimant's ability

7

to safely operate heavy machinery. In fact, he later found "no justification for long-term disability." (R.217). Following treatment for sleep apnea, Dr. Dietrich diagnosed Claimant "clinically free of significant day time symptoms" (R.215) and noted Claimant awoke rested (R.188).

A treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in ...[the] record." 20 C.F.R. § 404.1527(d)(2). Dr. Dietrich's opinion is consistent with other medical findings. For example, Dr. Dietrich's sleep apnea findings are in accord with those of Dr. Steel, who also concluded Claimant suffered from mild sleep apnea and Dr. Brown, who noted Claimant was less tired as a result of treatment. (R.340, 312). The opinion of Dr. Dietrich that Claimant has "no long-term disability" is supported by the other medical evidence indicating a normal range of motion of Claimant's upper and lower extremities. (R.185, 238, 309, 348, 350). Finally, Dr. Dietrich explained Claimant's condition would improve with exercise, weight loss and cessation of smoking (R.188, 221, 227) – advice provided in medical opinions from numerous physicians (R.186, 246, 310, 313, 351, 362-363, 369, 380).

Next, Claimant asserts the ALJ improperly discounted the psychological findings by J. Thomas Stack, Ph.D. and J. Michael Bramble, M.A. In particular, Claimant contends (1) Dr. Stack's opinion that Claimant cannot "tolerate stress and problems associated with day-to-day work activities" (R.246) due to her back pain and (2) Mr. Bramble's finding that Claimant could "be easily overwhelmed by even minimal environmental demands" (R.260) are both consistent with the overall medical record. Pl.'s Brf. at 9-10. However, Dr. Stack also found Claimant's

8

recent and remote memory to be within normal limits, her abstract thinking and judgment were "good" and she could perform simple arithmetic calculations. (R.246). Based on test results, Mr. Bramble concluded Claimant can complete basic activities of daily living and can function in a broad range of vocational settings. (R.259). Further, Mr. Bramble notes some of Claimant's complaints have not been medically diagnosed. (R.260). The tests performed by both Dr. Stack and Mr. Bramble, in addition to the "light work" conclusion of the Disability Determination Service ("DDS"), serve as persuasive contradictory evidence to the "easily overwhelmed" conclusions by Dr. Stack and Mr. Bramble. (R.289, 297). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on...the ALJ." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

Moreover, the ALJ placed import on Dr. Delaney's statement that failure of Claimant to participate in her own health and wellness would most likely render medical interventions futile. (R.369). The ALJ found Claimant had not sought long-term psychotherapy or group therapy despite the recommendations of Dr. Stack (R.246), Mr. Bramble (R.260) and Dr. Osunkoya (R.263) to receive treatment for her depression. (R.26). In fact, Claimant assured Dr. Osunkoya that she had attended the Jones County Health Department for depression management (R.262). However, she admitted otherwise to a caseworker the following day and claimed "fixing her head...[was not] going to make her able to return to work". (R.299). If an individual fails to follow prescribed treatment that can restore his/her ability to work *without good reason*, the individual will be deemed not disabled. 20 C.F.R. §§ 404.1530(a)(b), 416.930(a)(b) (emphasis added); *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting a symptom is not disabling if it can be reasonably controlled by medication or treatment). Claimant's opinion that

9

"fixing her head" would be ineffective is not a justifiable reason for refusing mental health treatment beyond prescribed medication. For the foregoing reasons, Claimant's argument on this issue is without merit.

## II. The ALJ properly evaluated the credibility of Claimant's statements.

Claimant contends the ALJ improperly assessed the credibility of Claimant's statements as to her pain. This Court disagrees. Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s). If the claimant's statements "are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the [claimant's] statements." Soc. Sec. Rul. 96-7p. In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. *Id.* In evaluating the case record, the ALJ must consider the following factors: (1) claimant's daily activities; (2) location, duration, frequency and intensity of the symptom(s); (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s); (5) non-medical treatment received for relief of the symptom(s); (6) any non-treatment measures used to relieve the symptom(s); and (7) other factors concerning functional limitations and restrictions due to the symptoms(s). 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.

The ALJ properly evaluated the credibility of Claimant's statements regarding pain. First, the ALJ considered the medical evidence proffered by numerous physicians and provided a

detailed analysis of their medical findings. While Claimant testified as to pain with all movements, numbness in her upper extremities and lower back pain that progresses down her legs (R.45), no objective evidence exists supporting Claimant's pain allegation. While it was initially thought her pain could be attributed to fibromyalgia or thyroid disease, medical examinations concluded otherwise (R.306, 310, 313). Also, Dr. Osunkoya found the "straight leg raising test negative for back pain" (R.263) and other examinations indicated Claimant had a good range of motion (R.185, 238, 309, 348, 350). Finally, various physicians encouraged her to exercise, despite her pain complaints. (R.186, 246, 310, 313). "Statements about...pain...will not alone establish...disabil[ity]; there must be medical signs and laboratory findings which show...medical impairment(s) which could reasonably be expected to produce the pain...alleged..." 20 C.F.R. §§ 404.1529(a), 416.929(a). "[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Craig*, 76 F.3d at 592 (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)).

Second, the ALJ considered Claimant's daily activities, which undermine her statements as to her pain. For example, Claimant testified she is responsible for the total care of her four grandchildren, which includes shopping for groceries and performing household chores. (R.41, 47-48). As such, her testimony provides further support for the ALJ's credibility determination. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (noting a claimant's testimony as to daily activities can be used to discredit testimony as to the alleged symptom(s)). The ALJ also considered the location of Claimant's pain, noting the "MRI scan of [her] lumbar spine showed only a minimal disc bulge at L5-S1 with no evidence of nerve root impingement or stenosis." (R.26). Claimant is prescribed no medication for pain (R.52) and her physicians placed no

11

restrictions on her activities. Finally, while the ALJ noted Claimant's mental impairments result in mild restrictions of daily living activities, Claimant has not attended long-term psychotherapy or group therapy. (R.26).

The ALJ considered the examinations and opinions of Claimant's physicians in addition to Claimant's statements, as required by law. *See Craig*, 76 F.3d at 595. The ALJ's credibility analysis is not diminished by Claimant's ability to point to evidence in the record supporting her allegations as to the severity of her symptoms. It is the responsibility of this Court to determine whether the ALJ's findings are supported by substantial evidence – not to determine the weight of the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's conclusion that Claimant's statements were not entirely credible is supported by substantial evidence. For the foregoing reasons, Claimant's argument on this issue is without merit.

### III. The ALJ properly assessed Claimant's RFC.

Claimant argues the ALJ erred in concluding Claimant could perform light work and in disregarding nonexertional limitations. This Court disagrees. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." SSR 96-8p. Moreover, the RFC assessment must "contain a thorough discussion and analysis of the objective medical evidence and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; include a resolution of any inconsistencies in the evidence as a whole; and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." SSR 96-8p. An RFC assessment also addresses the effect an

12

impairment has on an individual's exertional (e.g., ability to stand or sit) and nonexertional (e.g., mental activities, such as understanding and remembering instructions) capacities. SSR 96-8p.

The ALJ considered Claimant's medical history and provided a detailed synopsis of the medical findings by eight physicians, which indicated Claimant experienced some degree of limitation as a result of her impairments but not to the extent alleged by Claimant. (R.23-27). The ALJ's finding that Claimant can lift and carry 20 pounds occasionally and 10 pounds frequently is supported by the medical findings that Claimant has a normal range of motion as to both upper and lower extremities. (R.23-24, 185, 238). Also, the ALJ limited Claimant to work allowing for a sit and stand option, acknowledging Claimant's inability to sit or stand for lengthy periods of time as a result of her back pain. (R.25). This finding is also supported by the daily activities performed by Claimant. Furthermore, the ALJ found Claimant suffers from dysthymic disorder, a mental limitation which affects daily living activities and concentration abilities. (R.26). The ALJ accounted for this limitation by limiting Claimant to work requiring simple, routine and repetitive tasks. Finally, the ALJ's RFC determination is in agreement with the "light work" conclusion of the DDS medical consultants. (R.289, 297).

In compliance with SSR 96-8p, the ALJ also discussed his resolution of medical findings inconsistent with the medical evidence as a whole. Specifically, the ALJ found the opinions of Dr. Stack and Mr. Bramble as to Claimant's inability to handle stress associated with daily work activities to be inconsistent with other evidence. (R.26). As discussed above, the results of tests performed by both Dr. Stack and Mr. Bramble proved her memory to be within normal limits and that she could function in a broad range of vocational settings. The test findings were also in accord with the "light work" assessment by the DDS medical consultants. Finally, medical

records support the conclusion that Claimant's ability to deal with stress would improve if she sought long-term psychotherapy or group therapy (R.246, 260, 263) - action Claimant refused to take. (R.299). It is the ALJ's duty "to make findings of fact and to resolve conflicts in the evidence." *Hays*, 907 F.2d at 1456. The ALJ analyzed all of the relevant evidence in reaching his conclusion that Claimant could tolerate the stress associated with day-to-day work activities. The ALJ did not err in his assessment of Claimant's RFC. For the foregoing reasons, Claimant's argument on this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court recommends Claimant's Motion for Summary Judgment be denied, Defendant's Motion for Judgment on the Pleadings be granted and the final decision of the Commissioner denying benefits be upheld. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 11th day of January, 2008.

*Robert B. Jones, Jr.*
Robert B. Jones, Jr.
United States Magistrate Judge